# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**UNITED STATES OF AMERICA**
   **Plaintiff,**

 v.                Case No. 11-CR-66

**ISAAC MOGUEL**
   **Defendant.**

## SENTENCING MEMORANDUM

Defendant Isaac Moguel pleaded guilty to unlawful re-entry after deportation, contrary to 8 U.S.C. § 1326, and the parties jointly requested that the case proceed directly to sentencing. I conducted a colloquy with defendant, and he agreed to this procedure. Based on that colloquy, the parties' stipulation regarding the material facts and applicable sentencing guidelines, and the entire record, I found that the information in the record enabled me to meaningfully exercise sentencing authority under 18 U.S.C. § 3553. I therefore dispensed with a pre-sentence report under Fed. R. Crim. P. 32(c)(1)(A)(ii).

**I.**

In imposing sentence, the district court must first calculate the defendant's advisory sentencing guideline range, then determine the ultimate sentence under all of the factors set forth in 18 U.S.C. § 3553(a). See United States v. Panice, 598 F.3d 426, 441 (7th Cir. 2010). Here, the parties agreed to the following guidelines: base offense level 8 under U.S.S.G. § 2L1.2(a), plus 4 levels under § 2L1.2 (b)(1)(D) because defendant was deported following a conviction for a felony, i.e. a second offense violation of 8 U.S.C. § 1325 in 2009, and minus 2 levels for acceptance of responsibility under U.S.S.G. § 3E1.1, for a final offense level of 10;

a criminal history category of V; an imprisonment range of 21 to 27 months (but with a 2 year statutory maximum); 1 year supervised release; and a fine range of $1000 to $10,000. I found these calculations correct and adopted them accordingly.

**II.**

Section 3553(a) directs the court, in determining the particular sentence to be imposed, to consider:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
>
> (3) the kinds of sentences available;
>
> (4) the [advisory] sentencing [guideline] range[;]
>
> (5) any pertinent policy statement . . . issued by the Sentencing Commission[;]
>
> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
>
> (7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a). After considering these factors, the court must "impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection." Id. While the guidelines serve as the starting point and initial benchmark in making this determination, Gall v. United States, 552 U.S. 38, 49 (2007), the district court may not presume that a guideline sentence is the correct one, Nelson v. United States, 129 S. Ct. 890, 892 (2009). Rather, the court must make an independent

2

determination, without any thumb on the scale favoring a guideline sentence, United States v. Sachsenmaier, 491 F.3d 680, 685 (7th Cir. 2007), taking into account the types of sentences available, the relevant § 3553(a) factors, and the arguments of the parties, see Gall, 552 U.S. at 49-50.

**III.**

As indicated above, this was an unlawful re-entry case in which defendant, born in Mexico in 1983, first came to this country without legal authority in 2002, and numerous times since then. Most recently, he was removed on December 4, 2009, after serving a 150 day sentence for second offense unlawful entry under 8 U.S.C. § 1325. He came back some time thereafter and was found by Immigration and Customs Enforcement ("ICE") in this district on March 9, 2001.

Defendant was twenty-seven years old, and he had gotten into a significant amount of trouble in this country – driving without a license, disorderly conduct, operating after revocation ("OAR"), battery, resisting and criminal damage to property, and another OAR – between 2005 and 2007. In December 2008, immigration authorities formally removed him; since then he came back illegally six times. The first few times he re-entered it appeared that he was simply returned by the border patrol. In March 2009, he was prosecuted for unlawful entry under 8 U.S.C. § 1325, sentenced to 90 days, and removed in June 2009. He came back a month later, was again prosecuted under § 1325, sentenced to 150 days, and removed on December 4, 2009. He came back yet again but evaded detection until March 2011, when he was arrested for the instant offense. During his most recent period in the country he picked up convictions for drunk driving and marijuana possession.

Defendant advised that he returned to the United States to be reunited with his wife and

3

their two children in Wisconsin. He apparently had two other children who lived with their mother in Texas. His parents and two adult sisters still lived in Mexico, while two adult brothers lived in Wisconsin. His work record in this country was somewhat hard to pin down, but it appeared that he primarily worked as a street vendor selling food. He also gathered and recycled scrap metal.

The guidelines recommended 21-27 months, and it was clear that I had to impose a substantial prison sentence to promote respect for the law and deter defendant from coming back again. The lesser sentences he received – 90 and 150 days – did nothing to stop him from re-entering. I understood that his situation in Mexico may not be optimal, and that he had family here, but defendant had to understand that he could not come back to this country unless his legal situation changed.

I found a sentence somewhat below the guideline range sufficient, however. I did not see a significant need to protect the public, given the rather petty nature of defendant's record. Nor did it appear that defendant returned to this country for the purpose of committing new offenses or that he engaged in egregious conduct when he most recently came back; thus, this was not an aggravated case in that sense. His motive appeared to be re-uniting with his family. See United States v. Arguijo-Cervantes, 551 F. Supp. 2d 762, 765 (E.D. Wis. 2008) ("As I have concluded in other § 1326 cases, a defendant's motive for returning to the United States is a legitimate sentencing consideration, as is the nature of his conduct once he comes back."). Finally, defendant resolved this case promptly and with minimal expenditure of resources, and he fully accepted responsibility for his conduct. While defendant did not formally request "fast-track" credit, the manner in which he handled this case was consistent with fast-track policy. See United States v. Reyes–Hernandez, 624 F.3d 405, 422 (7th Cir. 2010).

4

Under all the circumstances, I found a sentence of 12 months and 1 day sufficient but not greater than necessary to satisfy all of the purposes of sentencing. This sentence provided a sufficient deterrent and promoted respect for the law, while acknowledging the mitigating circumstances of motive and the nature of defendant's record.

**IV.**

For these reasons and those stated on the record, I committed defendant to the custody of the Bureau of Prisons for a period of 12 months and 1 day. Based on his financial situation, I determined that defendant lacked the ability to pay a fine. Because defendant faced near certain removal and thus would not be available for supervision, and because it was not required by statute, I did not impose any supervised release. Other terms and conditions of the sentence appear in the judgment.

Dated at Milwaukee, Wisconsin, this 12th day of May, 2011.

/s Lynn Adelman

_____
LYNN ADELMAN
District Judge